[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
AUGUST 4, 2010
JOHN LEY
CLERK

No. 09-15108
Non-Argument Calendar
_____

Agency No. A070-689-123

EMILIO MONROY,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals
_____

(August 4, 2010)

Before DUBINA, Chief Judge, TJOFLAT and ANDERSON, Circuit Judges.

PER CURIAM:

Petitioner Emilio Monroy, through counsel, seeks review of the decision of the Board of Immigration Appeals ("BIA") affirming the immigration judge's ("IJ") decision to deny his motion to reconsider the denial of his earlier motion to reopen and rescind an *in absentia* removal order based on a claim of lack of notice. In his petition, Monroy argues that the BIA did not consider whether he actually received the notice of his hearing, misapplied a strong presumption of service of the order to show cause ("OSC"), and ignored its prior ruling in which it rescinded his brother's *in absentia* order based on similar circumstances. Monroy presented evidence that the signature on the return-receipt connected to the hearing notice was not his genuine signature, but he did not present similar evidence regarding the signature on the return-receipt for the OSC. Monroy contends that an agent who helped him prepare his asylum application likely signed for the OSC.

The IJ and BIA construed Monroy's motion to reconsider alternatively as a motion to reopen because he submitted additional evidence, and we review the denial of a motion to reopen for abuse of discretion. *See Jiang v. U.S. Att'y Gen.*, 568 F.3d 1252, 1256 (11th Cir. 2009); *see also* 8 C.F.R. § 1003.23(b)(3). Although an identical discretionary review applies to the denial of motions to reconsider, *see Assa'ad v. U.S. Att'y Gen.*, 332 F.3d 1321, 1340-41 (11th Cir. 2003), Monroy does not challenge the BIA's recharacterization of his motion, so he has waived any challenge related to the motion to consider. *See, e.g., Sepulveda*

2

*v. U.S. Att'y Gen.*, 401 F.3d 1226, 1228 n.2 (11th Cir. 2005) (holding that issues not raised on appeal are deemed abandoned).

We review the BIA's legal determinations and interpretations of law or statutes *de novo*. *Castillo-Arias v. U.S. Att'y Gen.*, 446 F.3d 1190, 1195 (11th Cir. 2006). We lack jurisdiction to consider claims that were not raised before the BIA. *See Amaya-Artunduaga v. U.S. Att'y Gen.*, 463 F.3d 1247, 1250 (11th Cir. 2006).

We are required to defer to the BIA's interpretation of an ambiguous immigration statute, so long as the interpretation is reasonable and does not contradict the clear intent of Congress. *See Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 842-44, 104 S. Ct. 2778, 2781-82 (1984); *Chen v. U.S. Att'y Gen.*, 565 F.3d 805, 809 (11th Cir. 2009) (noting that "[t]he degree of deference is especially great in the field of immigration") (internal quotation marks omitted). "An agency's interpretation is reasonable and controlling unless it is arbitrary, capricious, or manifestly contrary to the statute." *Cadet v. Bulger*, 377 F.3d 1173, 1185 (11th Cir. 2004) (internal quotation marks omitted). *Chevron* deference is appropriate in cases involving precedential three-member decisions of the BIA or where a single-member BIA decision relies on existing BIA or federal court precedent. *Quinchia v. U.S. Att'y Gen.*, 552 F.3d 1255, 1258 (11th Cir. 2008).

Regarding motions to reopen, our review is limited to determining "whether there has been an exercise of administrative discretion and whether the matter of exercise has been arbitrary or capricious." *Abdi v. U.S. Att'y Gen.*, 430 F.3d 1148, 1149 (11th Cir. 2005) (internal quotation marks omitted). The BIA's discretion is "quite broad" in granting or denying a motion to reopen. *Gbaya v. U.S. Att'y Gen.*, 342 F.3d 1219, 1220 (11th Cir. 2003). The BIA abuses its discretion when it fails to follow its binding precedent without a reasoned explanation for doing so. *Montano Cisneros v. U.S. Att'y Gen.*, 514 F.3d 1224, 1226-27 (11th Cir. 2008).

Generally, a party may file only one motion to reopen within 90 days after the final administrative decision, and this motion "shall state the new facts that will be proven at a hearing to be held if the motion is granted, and shall be supported by affidavits or other evidentiary material." INA § 240(c)(7), 8 U.S.C. § 1229a(c)(7)(B). The BIA may deny a motion to reopen for, among other reasons, an alien's failure to establish a *prima facie* case for relief. *Al Najjar v. Ashcroft*, 257 F.3d 1262, 1302 (11th Cir. 2001). If the alien is seeking to reopen proceedings for the purpose of applying for relief, the appropriate application and supporting documentation must be attached. 8 C.F.R. § 1003.23(b)(3).

An alien may file a motion to reopen to rescind a removal order entered *in absentia* (1) at any time, if the alien demonstrates that she did not receive notice, or (2) within 180 days, if based on "exceptional circumstances." *See* INA

4

§ 240(b)(5)(C), 8 U.S.C. § 1229a(b)(5)(C).  A claim of ineffective assistance of counsel may amount to exceptional circumstances, such as  "when an applicant's failure to appear is due to his attorney's errant instruction."  *Montano Cisneros*, 514 F.3d at 1226.

As noted above, the time and numerical limitations regarding motions to reopen do not apply if the petitioner seeks to rescind a removal order entered *in absentia* because he did not receive notice.  *See* INA § 240(b)(5)(C)(ii), 8 U.S.C. § 1229a(b)(5)(C)(ii).  The notice requirements in effect at the time Monroy was placed in deportation proceedings provided that, for an OSC and for notices of hearings, written notice "shall be given in person to the alien (or, if personal service is not practicable, such notice shall be given by certified mail to the alien or to the alien's counsel of record, if any) . . . ."  INA § 242B(a)(1)-(2), 8 U.S.C. § 1252b(a)(1)-(2) (1994); *see also Matter of Grijalva*, 21 I. & N. Dec. 27, 31-32 (BIA 1995).  The term "certified mail," for purposes of delivery of an OSC, is defined as "certified mail, return receipt requested." *Id.* § 242B(f)(1), 8 U.S.C. § 1252b(f)(1) (1994)*; see also Matter of Grijalva*, 21 I. & N. Dec. at 31.

The OSC was required to inform the alien, among other things, that he was obligated to provide a current address to the agency, and the notice of hearing informed the alien of the time and place of his proceedings, and the consequences for failing to appear.  *Id.* § 242B(a), 8 U.S.C. § 1252b(a) (1994).  Among these

5

consequences, the alien may be ordered removed *in absentia* if the government proved by clear and convincing evidence that written notice of the hearing was provided, and that the alien was deportable. *Id.* § 242B(c)(1), 8 U.S.C. § 1252b(c)(1) (1994).

In order to effect personal service of an OSC sent by certified mail, the return receipt must be signed either by the alien or "a responsible person at [the alien's] address." *Matter of Grijalva*, 21 I. & N. Dec. at 32. However, to effect personal service of a notice of hearing, there is no requirement that the return receipt be signed by the alien or a responsible person at the alien's address. *Id.* at 33-34. Proof of actual service or receipt of the notice by the respondent is not required, as certified mail of a notice of deportation proceedings sent to the alien's last known address is sufficient. *Id.*; *see Dominguez v. U.S. Att'y Gen.*, 284 F.3d 1258, 1259-60 (11th Cir. 2002) (holding that, under current statutory notice requirements, notice of a hearing sent to the most recent address on file is sufficient notice)*; see also Chaidez v. Gonzales*, 486 F.3d 1079, 1083-84 (9th Cir. 2007) (noting that there is a more stringent requirement for service of the OSC than for subsequent hearing notices, because once an alien is properly served with an OSC, he has notice that he is subject to deportation proceedings and will later be notified of the scheduled hearing) (persuasive authority). Consequently, due process is satisfied when the method of notice is "accorded in a manner

6

'reasonably calculated' to ensure that notice reaches the alien." *Anin v. Reno*, 188 F.3d 1273, 1278 (11th Cir.1999) (holding that alien was charged with notice when alien's attorney was provided notice of hearing through certified mail in accordance with above provisions) (internal quotation marks omitted).

Furthermore, under former notice provisions, where service of a hearing notice is sent by certified mail and "there is proof of attempted delivery and notification of certified mail, a strong presumption of effective service arises." *Matter of Grijalva*, 21 I. & N. Dec. at 37. This presumption could be overcome by "the affirmative defense of nondelivery or improper delivery by the Postal Service," supported by "substantial and probative" evidence. *Id.*

In rebutting the lesser presumption accorded to notice sent through regular mail, several circuits have indicated that an affidavit of nonreceipt *might* sometimes be sufficient. *See Salta v. INS*, 314 F.3d 1076, 1079 (9th Cir. 2002) (stating that where a petitioner initiates a proceeding to obtain a benefit and has no motive to avoid the hearing, a sworn affidavit that neither petitioner nor a responsible party residing at his address received the notice should suffice to rebut the presumption of delivery and entitle petitioner to an evidentiary hearing on the veracity of her allegations); *Ghounem v. Ashcroft*, 378 F.3d 740, 744-45 (8th Cir.2004) (same); *Maknojiya v. Gonzales*, 432 F.3d 588, 589 (5th Cir. 2005) (applying *Salta* even though petitioner did not initiate removal proceedings); *cf.*

7

*Joshi v. Ashcroft*, 389 F.3d 732, 735-36 (7th Cir. 2004) (noting that the BIA has not held that a mere affidavit of nonreceipt is not by itself sufficient proof of nonreceipt of notice). However, other courts have noted that an "uncorroborated, self-serving denial of receipt, even if sworn, is weak evidence." *Joshi*, 389 F.3d at 735; *see also Derezinski v. Mukasey*, 516 F.3d 619, 622 (7th Cir. 2008) (noting that "[t]he petitioner's sworn denial was the only evidence of nonreceipt, and it was weak evidence" where the petitioner had been a fugitive for eleven years before finally being apprehended during a traffic stop); *Gurung v. Ashcroft*, 371 F.3d 718, 722 (10th Cir. 2004) (stating that a petitioner who fails to submit documentary evidence and merely alleges that he did not receive proper notice has not demonstrated lack of notice).

Preliminarily, we note that Monroy does not challenge the soundness of the BIA's opinion in *Matter of Grijalva*, 21 I. & N. Dec. 27, or that it remains binding precedent to the extent it covers his proceedings. Therefore, he has waived this argument. Additionally, although Monroy presents evidence that BIA rescinded his brother's *in absentia* order based on comparable circumstances, he did not present this evidence and did not argue this issue to the IJ or BIA, and, therefore,

8

failed to exhaust it. Consequently, we lack jurisdiction to consider his claim of unequal treatment, or the BIA's failure to follow binding precedent.[1]

Turning to the issues properly preserved, the BIA did not abuse its discretion in denying Monroy's motion, construed as a second motion to reopen. Although Monroy corroborated his claim that he did not sign for the return receipt relating to the notice of hearing, he did not present the same corroboration to demonstrate that he did not sign the return receipt for the OSC. His uncorroborated, self-serving statement is weak evidence. Based on the evidence in the record, service of the OSC was proper because it was sent by certified mail, and the return receipt was signed by Monroy himself or his agent, who would constitute a "responsible person" at the listed address. Because the notice of hearing was sent by certified mail and there is "proof of attempted delivery and notification of certified mail," a strong presumption of effective service arose. Monroy's evidence did not establish "nondelivery or improper delivery" of the hearing notice. Officials were not required to show that he actually received notice of his deportation hearing, because the notice of hearing sent via certified mail to the address of record was sufficient.

---

[1] Nevertheless, we note that the BIA's opinion in his brother's case was unpublished and, therefore, not binding precedent on the BIA. Moreover, the BIA followed and applied its own precedent, namely, *Matter of Grijalva*, 21 I. & N. Dec. 27.

The claim that Monroy's failure to appear was due to his agent's failure to inform him of the hearing might support a claim of "exceptional circumstances." However, as found by the BIA, a motion to reopen based on a claim of "exceptional circumstances," is time-barred, and this filing deadline is mandatory and jurisdictional. Finally, although not specifically stated in the second motion to reopen, Monroy intimated that he wished to reopen proceedings to apply for relief, presumably to adjust his status. However, as noted by the BIA, he did not attach the requisite application, and, therefore, did not establish *prima facie* eligibility for relief. Consequently, we conclude that the BIA did not abuse its discretion in denying Monroy's motion in this respect. For the above-stated reasons, we deny Monroy's petition.

**PETITION DENIED.**

10